UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LORI S. MASLOW, in her capacity as Democratic State Committee Female Member and Assembly District Leader from the 41st Assembly District, as a member of the Executive Committee of the Kings County Democratic County Committee, and as a Female Member of the Kings County Democratic County Committee from the 18th Election District of the 41st Assembly District; KINGS COUNTY DEMOCRATIC COUNTY COMMITTEE; EXECUTIVE COMMITTEE OF THE KINGS COUNTY DEMOCRATIC COUNTY COMMITTEE; BENJAMIN C. STEINBERG, as a Male Member of the Kings County Democratic County Committee elected to such position for the 47th Election District of the 41st Assembly District by the Executive Committee of the Kings County Democratic County Committee; MARJORIE COHEN, as a Female Member of the Kings County Democratic County Committee elected to such position for the 70th Election District of the 59th Assembly District by the Executive Committee of the Kings County Democratic County Committee; WILLA M. WILLIS JOHNSON, as a Female Member of the Kings County Democratic County Committee elected to such position for the 42nd Election District of the 59th Assembly District by the Executive Committee of the Kings County Democratic County Committee;

AFFIRMATION
OF LORI S. MASLOW

DOCKET NO.

Plaintiffs,

-against-

ANDREW M. CUOMO, in his capacity as Governor of the State of New York; and LETICIA JAMES, in her capacity as Attorney General of the State of New York New York State Attorney General,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, Lori Maslow, make the following affirmation under the penalties of perjury:

1.      I, Lori Maslow, as plaintiff in the above-entitled action, respectfully move this court to order defendants to show cause why they should not be enjoined from compelling

Plaintiff Kings County Democratic County Committee ("KCDCC") and Plaintiff Executive Committee of KCDCC to hold an organizational meeting on or before December 17, 2020 until a final disposition on the merits in the above-entitled action.

2. Unless this order is issued, I will suffer immediate and irreparable injury in that my rights, as guaranteed by the First and Fourteenth Amendment to the United States Constitution, to associate as a member of KCDCC and KCDCC's Executive Committee will be violated if KCDCC's Executive Committee is ordered and/or compelled to hold an organizational meeting on or before December 17, 2020.

3. It is my understanding that the United States Court of Appeals for the Second Circuit has held that allegations of violations of First and Fourteenth Amendment rights to associate with one another as a political party are commonly considered irreparable injuries for purposes of a preliminary injunction.

4. I reside at 1761 Stuart Street, Brooklyn, NY 11229. I was born in 1960.

5. I have been involved in Brooklyn politics for many decades, starting when I was a teenager and accompanied my mother, the late Eleanor Fajnsod, when she collected petitions for Democratic candidates.

6. As the Democratic State Committee Female Member and Assembly District Leader from the 41st Assembly District, I play a substantial role in directing the internal workings of the Democratic Party in this Assembly District, such as (1) recruiting members to serve on the County Committee from within the 41st Assembly District, (2) advocating Democratic Party positions to elected public officials, (3) endorsing candidates for President, United States Senator, City Council, State Assembly, State Senate, Representative in Congress, Civil Court Judge, and State Supreme Court Justice, (4) recruiting candidates for local public offices, (5) helping raise contributions for Democratic Party candidates, (6) urging young people to register to vote to enroll as Democrats, (7) engaging in activities of a charitable nature and persuading others to do so on behalf of the Democratic Party, such as the Toys for Tots initiative and assisting at the distribution of food to those who have lost jobs due to the mismanagement by the federal government of the Covid-19 pandemic, (8) helping maintain a Democratic Party

clubhouse in the 41st Assembly District, (9) working together with my male counterpart member of the State Committee and Assembly District Leader, (10) recommending the appointment of Democratic Party representatives as poll workers at elections, (11) representing Democrats in the 41st Assembly District at State Committee meetings, and (12) working together with the Kings County Democratic Party leadership, the other State Committee members and Assembly District Leaders, and County Committee members to perform all of the foregoing.

7. I am also an elected member of the Kings County Democratic Party from the 18th Election District of the 41st Assembly District. I have attended meetings of the Democratic County Committee for many years. These meetings usually draw around 1000 people. Some meetings were at the auditoriums of Kingsborough Community College, Brooklyn College, or St. Francis College. The last meeting took many hours before it started; this was because people were coming in late and they had to be logged in. The meetings take so many hours because there are County Committee members who make many motions. I cannot imagine how this activity can be monitored on Zoom by someone who has difficulty negotiating it.

8. On November 29, 2020, I voted along with a majority of the Executive Committee of the Kings County Democratic County Committee to enact a rule amendment (1) creating at large County Committee positions to enable noncisgender individuals to serve for the current term of office, and (2) permitting the Executive Committee to fill all vacancies in the County Committee. On December 2, 2020, I submitted nominations to fill vacancies in my Assembly District and voted to fill vacancies in the County Committee across Kings County. I did so under the belief that I was acting within my First Amendment rights and those of the party's Executive Committee to structure the Democratic Party's organizational structure in a manner we deemed best to advance the party's interests, especially during the Covid-19 pandemic.

9. I am also a retired New York City public school teacher, having taught for 36 years.

10. Until the beginning of the Covid-19 pandemic I attended political meetings in person. This included: (1) meetings of the Kings County Democratic County Committee, (2)

meetings of the Executive Committee of the Kings County Democratic County Committee, (3) meetings of my Democratic Club, the 41st Assembly District Democratic Club, (4) Democratic Party judicial nominating conventions, and (5) various political fundraisers.

11.     With the shutdown of live in-person gatherings due to the Covid-19 pandemic, political participation has been limited to online virtual meetings and get-togethers.  Most of these have taken place on the Zoom videoconferencing platform.  I have tried to participate in this manner but have been limited in doing so by my physical disability.

12.     My physical disability prevents from being able to use all of the computer functions to participate in the democratic process and these meetings.

13.     I cannot press all of the necessary buttons to move the view to see all of the participants, I cannot always access the mute and unmute functions appropriately and I cannot type in the chat section while manipulating all of the other functions. There are times when during a Zoom meeting, I have to ask my son or husband to do these things for me.

14.     This is due to the fact that my eye muscles and all skeletal muscles, which include facial muscles, are not functioning properly at this time due to a proven genetic disorder.

15.     I have been diagnosed with Mitochondrial Myopathy Disease, which is listed in the National Organization of Rare Diseases, nord.org.  It has caused skeletal muscular myopia (Muscular Dystrophy) and PEO (Progressive External Ophthalmoplegia).  The mitochondria, an organelle in all the cells of our bodies, in the skeletal muscular cells are disfigured, ragged, and not providing the energy needed to function.  This is why my eyelids were drooping, muscles in arms, legs, and face felt weak, and I have had total loss of peripheral vision (documented) and double vision (documented).  My eyeglasses now have prisms in them to bring the double to one.  Thanks to the latest technology, I wear during the day eye inserts that keep my eyelids open.  However, I still have to constantly move my head from left to right to view a complete picture.  I was told to immediately stop driving.  I knew that was coming as I found myself having to take my right hand off the steering wheel, to physically help lift my right leg to brake.

16.     This illness also required me to retire as I was unable to stand for long periods of time and could not go up and down steps without difficulty.

17. Upon retirement, I applied for Social Security disability. I submitted all the medical documents I have and was accepted. The eye doctor from Social Security Disability even asked my permission to take a picture of my eyes, echoing the specialist I had seen, by saying she's read about this condition, but was told it is so rare she would never see it in person. The muscular Social Security doctor administered his own exam, which I failed.

18. I have made my own accommodations as well. I have an electric magnifying lighted glass that is over my keyboard. However, I am still at a disadvantage because I have to look down at the keyboard, focus, and cannot look at the screen at the same time. I can only participate on a Zoom videoconferencing meeting when it is set up in gallery view, one screen, having to turn my head constantly left to right to see. After a long meeting, my neck is in pain.

19. The Kings County Democratic County Committee meeting as planned now on a multi-screened platform -- forced by the State of New York - - will cause me to have to focus on what is on the screen to read when I presently have audible accommodations to alleviate the stress on my eyes. These meetings will force me to have to focus on muting and unmuting, clicking various buttons, and switching screens to be able to view all of the participants.

20. This meeting will also cause me to have to constantly move my head from right to left in what may prove to be a five hour plus meeting, putting me, an elected Assembly District Leader, as well as others with disabilities in a situation that would shortchange full participation as opposed to a full in-person meeting.

21. I find it humiliating and extremely infuriating that a Justice of the State of New York stated that KCDCC's contention that the Rules Amendment is necessary to prevent disenfranchising members who may have difficulty functioning in this technological mode, is somewhat disingenuous.

22. People, such as myself, who fall under the ADA (American with Disabilities Act) category, cannot function in a virtual meeting that would entail the participation of hundreds of individuals.

23. There are no other remedies for me other than an in-person meeting.

24. I have a First Amendment right to attend meetings in person so I can fully participate with other Democrats to work for the betterment of our party and our candidates.

25. Forcing me to participate in a virtual organizational meeting not only violates my associational rights pursuant to the First and Fourteenth Amendments as a member of KCDCC and its Executive Committee but violates my rights as an individual with disabilities.

26. As can be seen from the foregoing, I have no adequate remedy at law.

WHEREFORE, I respectfully request that the Court grant the within relief as well as such other and further relief that may be just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 7, 2020

_____
LORI S. MASLOW